1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   CONSUELO MERCADAL, GUARDIAN            No.  2:12-cv-2907 AC
     AD LITEM FOR E.M.M.,
12
                 Plaintiff,
13                                          ORDER

14          v.

15   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security,
16
                 Defendant.
17

18          Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title

20   XVI of the Social Security Act ("the Act").  The parties' cross motions for summary judgment are

21   pending.[1]  For the reasons discussed below, the court will deny plaintiff's motion for summary

22   judgment and will grant defendant's cross-motion for summary judgment.

23                          PROCEDURAL BACKGROUND

24          Plaintiff, a minor, filed an application for SSI through her mother and guardian ad litem

25   on October 26, 2009, alleging disability beginning on January 1, 2002, though this date was later

26

     _____

27   [1] In the future, counsel for defendant would be well-advised to double-check the caption on
     documents filed with the court to ensure that they match the case at hand.  See ECF No. 22 at 2.
28

                                              1

1  amended to coincide with the SSI application date.  Administrative Record ("AR") 118-20; see

2  also AR 37.  Plaintiff's application was denied initially and again upon reconsideration.  AR 68-

3  72, 76-81.  On February 2, 2011, a hearing was held before administrative law judge ("ALJ")

4  David Blume.  AR 35-65.  Plaintiff appeared with attorney representation at the hearing, at which

5  she, her mother, and a vocational expert testified.  See id.  In a decision dated June 20, 2011, the

6  ALJ issued an unfavorable decision finding plaintiff not disabled.  AR 12-28.  The ALJ made the

7  following findings (citations to 20 C.F.R. omitted):

8
9  > 1.  The claimant was born on July 20, 1995.  Therefore, she was an adolescent on October 26, 2009, the date [the] application was filed, and is currently an adolescent.

10
11  > 2.  The claimant has not engaged in substantial gainful activity since October 26, 2009, the application date.

12  > 3.  The claimant has the following severe impairments: learning disorder and attention deficit hyperactivity disorder (ADHD).

13
14  > 4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

15
16  > 5.  The claimant does not have an impairment or combination of impairments that functionally equals the listings.

17  > 6.  The claimant has not been disabled, as defined in the Social Security Act, since October 26, 2009, the date the application was filed.

18  AR 15-28

19  Plaintiff requested review of the ALJ's decision by the Appeals Council, but the Council

20  denied review on September 5, 2012, leaving the ALJ's decision as the final decision of the

21  Commissioner of Social Security.  AR 1-4.

22  FACTUAL BACKGROUND

23  Born on July 20, 1995, plaintiff was 14 years old on the revised alleged onset date of

24  disability and 15 years old at the time of the administrative hearing.  Since she was in the first

25  grade, plaintiff has been in special education or received special services for an unspecified

26  learning disability and attention deficit hyperactivity disorder ("ADHD").

27  LEGAL STANDARDS

28  The Commissioner's decision that a claimant is not disabled will be upheld if the findings

2

1     of fact are supported by substantial evidence in the record and the proper legal standards were

2     applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000);

3     Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Tackett v. Apfel,

4     180 F.3d 1094, 1097 (9th Cir. 1999).

5         The findings of the Commissioner as to any fact, if supported by substantial evidence, are

6     conclusive.  See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is

7     more than a mere scintilla, but less than a preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th

8     Cir. 1996).  "It means such evidence as a reasonable mind might accept as adequate to support a

9     conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v.

10    N.L.R.B., 305 U.S. 197, 229 (1938)).  "While inferences from the record can constitute

11    substantial evidence, only those 'reasonably drawn from the record' will suffice."  Widmark v.

12    Barnhart, 454 F.3d 1063, 1066 (9th Cir.2006) (citation omitted).

13        Although this court cannot substitute its discretion for that of the Commissioner, the court

14    nonetheless must review the record as a whole, "weighing both the evidence that supports and the

15    evidence that detracts from the [Commissioner's] conclusion."  Desrosiers v. Sec' y of Health and

16    Hum. Servs., 846 F.2d 573, 576 (9th Cir.1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th

17    Cir.1985).

18        "The ALJ is responsible for determining credibility, resolving conflicts in medical

19    testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001)

20    (citations omitted).  "Where the evidence is susceptible to more than one rational interpretation,

21    one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  Thomas v.

22    Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  However, the court may review only the reasons

23    stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not

24    rely."  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir.2007); see also Connett v. Barnhart, 340 F.3d

25    871, 874 (9th Cir. 2003).

26        The court will not reverse the Commissioner's decision if it is based on harmless error,

27    which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the

28    ultimate nondisability determination.'"  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir.

1  2006) (quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v.

2  Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

3                                               ANALYSIS

4          Plaintiff seeks reversal of the Commissioner's decision on the ground that the ALJ erred

5  at Step Three of the sequential evaluation process for minor claimants.  The Commissioner argues

6  that the ALJ's decision is supported by substantial evidence and is free from legal error.

7  A.      Relevant Law

8          Supplemental Security Income ("SSI") is available under Title XVI of the Social Security

9  Act (the "Act") for an individual under the age of 18 when she is "disabled."  42 U.S.C. §

10  1382c(a)(3)(C)(i); see also 42 U.S.C. § 1381a.  A child is "disabled" if she "has a medically

11  determinable physical or mental impairment, which results in marked and severe limitations, and

12  which can be expected to result in death or which has lasted or can be expected to last for a

13  continuous period of not less than 12 months."  Id.; Merrill v. Apfel, 224 F.3d 1083, 1085 (9th

14  Cir. 2000).  "The claimant bears the burden of establishing a prima facie case of disability."

15  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995) (citing Drouin v. Sullivan, 966 F.2d 1255,

16  1257 (9th Cir. 1992)), cert. denied, 517 U.S. 1122 (1996); Smolen v. Chater, 80 F.3d 1273, 1289

17  (9th Cir. 1996) (citation omitted).

18          The Commissioner has established a three-step sequential evaluation process for the ALJ

19  to follow when considering the disability application of a minor claimant.  20 C.F.R. § 416.924;

20  see, e.g., Augustine ex rel. Ramirez v. Astrue, 536 F. Supp. 2d 1147, 1150 (C.D. Cal. 2008)

21  (applying the three-step sequential evaluation process in a child disability case); Smith ex rel.

22  Enge v. Massanari, 139 F. Supp. 2d 1128, 1132 (C.D. Cal. 2001) (same).

23          At Step One, the ALJ must determine whether the claimant is engaged in "substantial

24  gainful activity."  Id. § 416.924(a).  If the claimant engages in substantial gainful activity, she is

25  not disabled regardless of her medical condition, age, education, or work experience.  Id. §

26  416.924(a)-(b).

27          If the claimant is not engaged in substantial gainful activity, at Step Two, the ALJ must

28  determine whether the claimant has a "severe" medically determinable impairment or

1    combination of impairments.  20 C.F.R. § 416.924(a).  For a child, a medically determinable

2    impairment or combination of impairments is not severe if it is a "slight abnormality or a

3    combination of slight abnormalities that causes no more than minimal functional limitations. . . ."

4    Id. § 416.924(c).  If the claimant's impairment(s) is not severe, the child is not disabled, and SSI

5    is denied at this step.  Id. § 416.924(a), (c).

6          If it is determined that one or more impairments are severe, at Step Three, the ALJ must

7    determine whether the claimant's impairments meets, medically equals, or functionally equals an

8    impairment in the Listing of Impairments (the "Listing"), 20 C.F.R. § 404, Subpart P, Appendix

9    1.  If the claimant's impairment(s) meets or equals an impairment in the Listing, and meets the

10    durational requirement, disability is presumed and benefits are awarded.  Id. § 416.924(a), (d).

11          Step Three encompasses two analytical steps.  First, it must be determined whether the

12    claimant's impairments meets or medically equals a Listing.  The mere diagnosis of an

13    impairment in the Listing is insufficient, in itself, to sustain a finding of disability.  Young v.

14    Sullivan, 911 F.2d 180, 183 (9th Cir. 1990); Key v. Heckler, 754 F.2d 1545, 1549 (9th Cir. 1985).

15    The impairment must also satisfy all of the criteria of the listing.  20 C.F.R. § 416.925(d).

16          If the claimant does not meet or medically equal a Listing, she may still be considered

17    disabled if an impairment results in limitations that "functionally equal the listings."  20 C.F.R. §

18    416.926a(a).  In determining whether the severe impairment(s) functionally equals the listings,

19    the ALJ must assess the claimant's functioning in the following six domains: (1) acquiring and

20    using information; (2) attending and completing tasks; (3) interacting and relating with others; (4)

21    moving about and manipulating objects; (5) caring for yourself; and (6) health and physical

22    wellbeing.  20 C.F.R. § 416.926a(b)(1).  To "functionally equal" the listings, the impairment(s)

23    must result in "marked" limitations in two domains of functioning or an "extreme" limitation in

24    one domain.  Id. § 416.926a(a), (d).  In making this assessment, the ALJ must look at "how

25    appropriately, effectively, and independently [the claimant] preform[s] [her] activities compared

26    to the performance of other children [the claimant's] age who do not have impairments."  Id. §

27    416.926a(b).

28

A child has a "marked" limitation in a domain when her impairment(s) "interferes seriously" with her "ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). The regulations also provide that "marked" limitations means a limitation that is "more than moderate" but "less than extreme." Id. A child has an "extreme" limitation in a domain when her impairment(s) "interferes very seriously" with her "ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). The regulations also provide that an "extreme" limitation also means a limitation that is "more than marked." Id. However, "extreme" limitation does not mean a "total lack or loss of ability to function." Id.

B.      The ALJ's Decision

At Step One, the ALJ found that plaintiff had not engaged in substantial gainful activity since the disability onset date. AR 18. At Step Two, the ALJ found that plaintiff suffers from the following severe impairments: learning disorder and ADHD. Id. At Step Three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets, medically equals, or functionally equals any of the listed impairments. Specifically, the ALJ found that plaintiff has no limitation in Moving About and Manipulating Objects; less than marked limitation in Acquiring and Using Information, Attending and Completing Tasks, Ability to Care for Herself, and Health and Physical Well-Being; and marked limitation in Interacting and Relating with Others.

In support of his conclusion that plaintiff has less than marked limitation in her ability to acquire and use information, the ALJ reviewed the medical record, turning first to an October 2008 IQ test that revealed scores in the average range. See AR 386. He then discussed an October 2009 Individualized Education Program ("IEP") report indicating that plaintiff had a specific (though unspecified) learning disability. AR 339. The IEP noted that plaintiff works well in small and large group settings and is able to follow instructions and pay attention, though she struggles to decode, read fluently and comprehend at grade level. She does function better when instructions and, in the case of multiple choice assessments, questions and answers are read orally to her. She was noted to be easily distracted though sometimes easily redirected. At the time, plaintiff was earning a grade of C+ in math, C+ in literacy, and B+ in science. AR 355.

6

1  The IEP noted that plaintiff could continue to receive special education services in the learning

2  center and support in mainstream classes.

3       The ALJ next considered the November 2009 report of examining psychologist, Dr.

4  Sheila Snyder, who provided a second IQ score, placing plaintiff in the borderline range of

5  intellectual ability.  AR 451.  Dr. Snyder's summary of her examination is reproduced here in

6  part:

7            [Plaintiff] receives some special remedial interventions at school.
             She is a pleasant youngster who showed adequate concentration in
8            a one on one setting but has difficulty with possible ADHD in the
             classroom.  She also functions below expected grade levels. She has
9            become increasingly anxious about school and is having panic
             attacks. . . . She is behind academically and her social skills and self
10           help skills are also lagging. Testing shows decline over the previous
             evaluations. She may have done less well due to increasing anxiety
11           or because children can tend to fall further behind as expectations
             change.  However, she did make a good effort. . . .
12

13  AR 455.  Dr. Snyder diagnosed plaintiff with borderline intelligence and possible learning

14  disability.

15       The ALJ implicitly gave minimal weight to Dr. Snyder's report because, at the time that it

16  was provided, plaintiff was in mainstream classes with some special assistance, though plaintiff's

17  mother contends the school refused to give plaintiff an increased level of accommodation, AR

18  454, 495, and because plaintiff was not on medication at the time.  Also at the time, plaintiff was

19  having coincident attitude and behavior problems, as well as a few minor episodes of cutting

20  herself, though plaintiff denied suicidal ideation.  AR 495.  From November 2009 onward,

21  though, the ALJ noted that plaintiff's grades showed some fluctuation though overall

22  improvement.  He also noted that both plaintiff and her mother testified that her academic

23  performance and behavior have improved since she started taking Concerta and changed to a new,

24  smaller school with more individualized attention.

25       Later in the decision, the ALJ referenced and then gave considerable weight to the

26  opinions of two sets of State agency medical consultants as well-supported and for the most part

27  consistent with the medical record.  See AR 27.  Relevant here, the first set of medical

28  consultants, Dr. Sheehy and Dr. Tashjian, opined in January 2010 that plaintiff has, inter alia, less

1   than marked limitation in her ability to acquire and use information.  AR 465-71.  The second set

2   of medical consultants, Dr. Amon and Dr. Meenakshi, opined in July / August 2010 that plaintiff

3   has, inter alia, marked limitation in her ability to acquire and use information.  AR 526-34.

4          Because plaintiff did not have an impairment or combination of impairments resulting in

5   either a marked limitation in two domains or an extreme limitation in one domain, the ALJ

6   concluded that plaintiff was not disabled.

7   C.     Analysis

8          Plaintiff moves for summary judgment on the ground that the ALJ erred in finding that

9   plaintiff has less than marked limitation in her ability to acquire and use information.[2]  The crux

10  of plaintiff's argument is that the ALJ should have given more weight to the opinion of Dr. Amon

11  and Dr. Meenakshi that plaintiff has marked limitation in this area based on their consideration of

12  an April 13, 2010 progress note revealing that plaintiff continues to suffer from academic

13  problems and "oppositionality" at school, a note that Dr. Sheehy and Dr. Tashjian's January 2010

14  opinion did not consider.  Plaintiff asserts that, because the opinion of Dr. Amon and Dr.

15  Meenakshi is more consistent with the record, the ALJ should have given that opinion greater

16  weight.  Relatedly, plaintiff argues that the ALJ erred in failing to explain why he discredited the

17  opinion of these two medical consultants as to plaintiff's ability to acquire and use information.

18         The court turns first to plaintiff's argument that, like Dr. Amon and Dr. Meenakshi, Dr.

19  Sheehy and Dr. Tashjian would have found plaintiff to have marked limitation in her ability to

20  acquire and use information if they had an opportunity to consider the April 13, 2010 progress

21  note.  Assuming the latter set of consultants would have reached the same conclusion as Dr.

22  Amon and Meenakshi, the court is unconvinced that the ALJ would have accepted the conclusion

23  that plaintiff has marked limitation in this area.  This progress note, which was prepared by a

24  psychology social worker, is referenced in Dr. Amon and Dr. Meenakshi's report only insofar as

25  the therapist's ultimate impression is concerned: ADHD, some oppositional behavior primarily at

26  ───────────────
    [2] A finding of a marked limitation in this domain, together with the marked limitation in
27  interacting and relating with others that the ALJ did find (AR 23), would support a finding of
    disability.
28

1   school and secondary to chronic poor academic functioning, with performance and school anxiety

2   secondary to same.  See AR 511, 533.  The therapist wrote that plaintiff could benefit from a

3   medical consultation and advocacy for school needs.  The therapist also noted that plaintiff has

4   limited intellectual functioning and is easily agitated when confused, though she does well with

5   slow pace and much repetitive explanation in understandable terms.

6          On review, the court finds that this note was merely duplicative of Dr. Snyder's

7   November 2009 report, which Dr. Sheehy and Dr. Tashjian did consider.  Like the April 13, 2010

8   note, Dr. Snyder's report revealed that plaintiff suffers from anxiety, has a hard time following

9   instructions in class and paying attention, interrupts impulsively and needs to have instructions

10   repeated, is easily frustrated in school and does not do well with criticism, and is at times

11   oppositional.  See AR 453-54.  In considering and rejecting Dr. Snyder's report, the ALJ wrote

12   that, at the time that it was provided, plaintiff was in mainstream classes with minimal special

13   assistance and she was not on medication.  Even at the time of writing of the April 13, 2010

14   progress note, plaintiff had not yet transferred to her new school or started her medication.  See

15   AR 52 (plaintiff started taking Concerta in May or June 2010); 58 (plaintiff started the 2010-2011

16   academic year at a new, smaller school).  But the evidence shows that once medication was

17   started and plaintiff was provided with more individualized instruction, her anxiety,

18   concentration, behavior, and grades all improved.  See Pl.'s Dep. Test. at AR 40-41 (Concerta

19   helping plaintiff control self in class and pay attention), 47 (new high school has made a big

20   difference for plaintiff), 48-49 (plaintiff no longer cutting self); Pl.'s Mother's Dep. Test. at AR

21   51 (plaintiff doing better at new school with extra help for her disability), 52-53 (plaintiff's mood

22   was "a little bit better" with medication).  See also AR 198 (as of December 2010, plaintiff

23   received 2 A's, 2 B's, one C, and one C+), AR 208 (as of May 2010, plaintiff received 2 B, 2

24   B+'s, one B-, one C, and one C+); Meredith ex rel. D.H. v. Astrue, 2011 WL 1303308, at *7

25   (E.D. Wash. Apr. 5, 2011) ("The lack of failing grades . . . is inconsistent with a finding of

26   disability.").

27          In fact, examination of the entirety of the April 13, 2010 progress note, which Dr. Amon

28   and Dr. Meenakshi did not reference, supports the ALJ's ultimate determination that changes in

9

1   plaintiff's academic environment improved her impairments.  The note revealed, for example,

2   that plaintiff's behavior problems and oppositional behavior lessened when she was transferred

3   out of a particular teacher's class, that plaintiff's sleep had improved, that plaintiff had not

4   experienced anxiety since the IEP process was engaged, and that she no longer suffered from

5   mood problems.  AR 510.  The therapist noted that plaintiff's mood problems and past behavior

6   problems, including anxiety and a few cutting episodes, were all related to school problems, and

7   that since the family began addressing plaintiff's learning difficulties and since plaintiff was

8   assigned a new teacher, her mood had improved and there had been no cutting episodes for many

9   months.  Id.  The court could therefore reasonably infer that the ALJ's reasoning for rejecting Dr.

10  Snyder's report is equally applicable to the April 13, 2010 progress note.

11          Moreover, while plaintiff is correct that the ALJ did not specifically state the reasons for

12  crediting the opinion of one set of medical consultants over the other, the undersigned finds that

13  any error was harmless.  See Carmickle v. Comm'r of Social Sec. Admin., 533 F.3d 1155, 1162

14  (9th Cir. 2008) (holding that an ALJ's error is harmless so long as substantial evidence supports

15  the ultimate conclusion).  "So long as there remains 'substantial evidence supporting the ALJ's

16  conclusions' and the error 'does not negate the validity of the ALJ's ultimate conclusion,' such is

17  deemed harmless and does not warrant reversal."  Id.

18          A reasonable interpretation of the ALJ's decision is that the opinion of Dr. Sheehy and Dr.

19  Tashjian coincides with the ALJ's determination that plaintiff's ability to acquire and use

20  information is improved when she is on medication and when there is a change in her academic

21  environment.  See AR 21.  These reasons constitute substantial evidence.  See Warre v. Comm'r

22  of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled

23  effectively with medication are not disabling for the purpose of determining eligibility for SSI

24  benefits."); Jamerson v. Chater, 112 F.3d 1064, 1067 (9th Cir. 1997) (lack of failing grades in

25  special education class can "constitute substantial evidence in support of the Commissioner's

26  finding that claimant is not disabled.").  And the ALJ's failure to specifically state, "I am

27  crediting the opinion of this set of medical consultants over the other for these reasons . . ." is not

28  fatal to the Commissioner's decision.  See Magallanes v. Bowen, 881 F.2d 747 (9th Cir. 1989)

1   ("It is true that the ALJ did not recite the magic words, "I reject Dr. Fox's opinion about the onset

2   date because. . . ."  But our cases do not require such an incantation.  As a reviewing court, we are

3   not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's

4   opinion.").

5           As the April 13, 2010 record was not materially different from those considered by the

6   ALJ, and because the court finds that substantial evidence exists to support the Commissioner's

7   decision that plaintiff had less than marked limitation in her ability to acquire and use

8   information, that decision must be upheld.

9           Accordingly, IT IS HEREBY ORDERED that:

10          1.   Plaintiff's motion for summary judgment is denied;

11          2.   The Commissioner's cross-motion for summary judgment is granted;

12          3.   The Clerk of the Court is directed to enter judgment in favor of defendant.

13  DATED: March 14, 2014

14
    _____
15  ALLISON CLAIRE
    UNITED STATES MAGISTRATE JUDGE
16

17

18

19

20

21

22

23

24

25

26

27

28

11